AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information and location information Associated<br>With (787) 988-9344 That Is Stored At Premises<br>Controlled By Sprint Corporation more fully<br>described in Attachment A, attached hereto | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.   20-sw-663-KLM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the  State and  District of   Colorado , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1951 | Interference with Commerce by Threats or Violence |

The application is based on these facts:

X  Continued on the attached affidavit, which is incorporated by reference.
☐  Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested
   under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/ William P. Monahan*
*Applicant's signature*

Task Force Officer William P. Monahan, Jr., FBI
*Printed name and title*

Sworn to before me and:  ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date:  **04 Jun 2020**

*Judge's signature*

Kristen L. Mix
United States Magistrate Judge
*Printed name and title*

City and state:   Denver, CO

Case 2:21-cr-00014-PAB Document 136-1 Filed 10/03/22 USDC Colorado Page 2 of 39

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (787) 988-9344 (the "Target Cell Phone number"), whose wireless service provider is Sprint Corporation, a company headquartered at 6480 Sprint Parkway, Overland Park, KS 66251.

2. Records and location information associated with the Target Cell Phone numbers that is within the possession, custody, or control of Sprint Corporation.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

1. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time periods of **June 6, 2019 through May 1, 2020**:

    a. **Subscriber Records:** The following information about the customers or subscribers of the Account:

        ii. Names (including subscriber names, user names, and screen names);

        iii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iv. Local and long distance telephone connection records;

        v. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        vi. Length of service (including start date) and types of service utilized;

        vii. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        viii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        ix. Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b. **Call/Text/Data Detail Records**: All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Account for the time periods of **June 6, 2019 through May 1, 2020.**

c. **Specialized Location Records:** All call, text, and data connection location information, related to all specialized carrier records that may be referred to as NELOS (Network Event Location System), RTT (Real Time Tool), PCMD (Per Call Measurement Data), TDOA or Timing Advance Information (also known as TruCall), Mediation Records, E9-1-1, and/or Historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and Sector of the device in relationship to the network when connected to the network with the identified mobile number account, **June 6, 2019 through May 1, 2020.**

d. **Carrier Key** related to call detail, text messages, data connections, IP logs, IP Sessions, web site and/or application connections, and cell site information.

e. **Cell Site List(s):** List of all cell-sites for **June 6, 2019 through May 1, 2020.** for all state(s) in which the above records used cell locations. Cell site lists to include switch, cell-site number, name, physical address, longitude and latitude, all sectors associated with each cell-site, azimuth, and beam-width of each related sector.

## II.    Information to be Seized by the Government

1. All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 1951 during the periods referenced herein.

2. All information described above in Section I that constitutes location information of the target phone numbers in relation to violations of 18 U.S.C. § 1951.

3. All information related to the identity of the user, owner, operator, or subscriber of the target phone number and any devices associated with the target phone number.

4. All information related to the identity of any potential co-conspirators involved in violations of 18 U.S.C. § 1951 in communication with the target phone number during the periods referenced herein.

## III.    Execution and Delivery

1. Pursuant to 18 U.S.C. 2703(g), the presence of an agent is not required for service or execution of this warrant.

2.    The Provider shall deliver the information set forth above within **7 days** of the service of this warrant and the PROVIDER shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent **electronic** medium, to:

Task Force Officer William P. Monahan Jr.
Federal Bureau of Investigation
Rocky Mountain Safe Streets Task Force
Denver Field Office
8000 E. 36th Ave.
Denver, Colorado 80238

3.    This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## IV.    Order of Non-Disclosure

Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b)(1), the Court orders **Sprint** not to disclose the existence of this warrant to the subscriber for a period of ONE YEAR from the date of this warrant's issuance.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, William P. Monahan Jr. being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under

Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the

location of the cellular telephone assigned call number (787) 988-9344 (defined in Attachment A

hereto as the "Target Cell Phone"), whose service provider is Sprint Corporation, a wireless

telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, KS 66251.

The information to be searched is described in the following paragraphs and in Attachment A.

This affidavit is made in support of an application for a search warrant under 18 U.S.C. §

2703(c)(1)(A) to require Sprint to disclose to the government copies of the information further

described in Section I of Attachment B.  Upon receipt of the information described in Section I

of Attachment B, government-authorized persons will review the information to locate items

described in Section II of Attachment B.

2.      I am a Detective with the Denver Police Department, am currently assigned to the

Major Crimes Division, and detailed to the Rocky Mountain Safe Streets Task Force of the

Federal Bureau of Investigation as a Task Force Officer (TFO).  I have been a police officer for

over fifteen years and have conducted investigations of offenses including: Robbery, Homicide,

Auto Theft, Assault, Burglary, and other property crimes.  I have received training and have

experience in the use of investigative methods related to electronic, computer, and Internet-based

1

SW_00000309

crimes. I have general and specialized training in normal methods of investigation, including but not limited to the general questioning of witnesses and suspects, the review of phone and computer records, physical surveillance, and the detection and collection of physical evidence. I have investigative experience and have authored several search warrants in cases involving electronic evidence, emails, text messages, and the use of the Internet. I also regularly consult with other experienced law enforcement officers, special agents, and FBI computer scientists who have likewise participated in these types of investigations.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1951 (Interference with Commerce by Threats or Violence) have been committed by David Taylor, and Jimmy Garrison. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of other individuals who are engaged in the commission of these offenses.

5.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

2

## PROBABLE CAUSE

6.     The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation of armed robbery of a Brinks armored truck that occurred on October 30, 2019, at 5201 S Yosemite St in the city of Greenwood Village, State of Colorado, County of Arapahoe, regarding possible violations of 18 U.S.C. § 1951.

7.     On October 30, 2019 at approximately 2:29 p.m., the Greenwood Village Police Department responded to the Bank of Colorado located at 5201 South Yosemite Street, Greenwood Village, Arapahoe County, Colorado, regarding an armed robbery of a Brinks armored car.  After arriving on scene Greenwood Village officers began investigating and were later joined by investigators from the Rocky Mountain Safe Streets Task Force (RMSSTF).

8.     Officers reviewed surveillance video and conducted interviews and learned the following:

9.     At approximately 2:08 p.m. the Brinks armored car driven by Brinks Messenger S.G, arrived in front of the Bank of Colorado.  At approximately 2:10 p.m. a dark brown or dark gray colored Nissan Pathfinder bearing Colorado license plate CVD-251 (hereinafter suspect vehicle) backed into the parking lot south of the armored car.  There was one vehicle parked between the armored vehicle and the suspect vehicle.

10.     Gimeno wheeled currency inside of the bank.  A few minutes later Gimeno left the bank and went to the back of the armored vehicle with a dolly carrying $3000.00 in loose quarters and $50.00 in loose pennies.  Gimeno opened the rear door of the armored vehicle.  As Gimeno opened the door, both driver's side doors of the suspect vehicle opened.

11.     Suspect 1 got out of the rear driver's side passenger door and was carrying an AK-47.  Suspect 1 immediately ran toward Gimeno and the armored vehicle.  Gimeno dropped

3

to her knees on the rear driver's side of the armored vehicle. Suspect 1 attempted to remove Gimeno's handgun from her holster but was unsuccessful.

12. Suspect 2 got out of driver's door carrying a black semi-automatic handgun in their right hand and a set of flex cuffs in their left hand. Suspect 3 also got out of the driver's door and immediately followed suspect 2. Suspect 3 was carrying a semi-automatic handgun and a blue bag. Suspect 2 entered the rear compartment of the armored truck followed by suspect 3. Suspect 2 got out of the armored vehicle carrying clear plastic bags of loose money and approximately 2 seconds behind him, suspect 3 got out of the armored car with a blue bag appearing to contain clear plastic bags inside of it.

13. Suspect 2 got into the driver's seat of the suspect vehicle and suspect 3 got into the front passenger seat. Suspect 1 left Gimeno and returned to the suspect vehicle getting into the rear driver's side passenger door. The suspect vehicle left the parking lot and was seen traveling southbound on South Yosemite Street. From the time the suspects were seen getting out of the suspect vehicle to the time they were seen fleeing the scene was approximately 33 seconds. After the robbers left the scene S.G. was seen getting into the armored vehicle, coming out of the vehicle, and then using a cell phone.

14. S.G. provided a written statement and an initial interview while on scene. S.G. reported she pulled up to the Bank of Colorado and unloaded the order with the dolly. S.G. serviced the bank. S.G. left the bank and rolled the dolly down the ramp. S.G. opened the back door of the armored vehicle. As soon as the door opened two men got out of a dark colored SUV that was parked next to a Mercedes. They had hand guns pointed at S.G.. The passenger had a pistol in their right hand. A male told S.G. to get on the ground, so she dropped to her knees on the back driver's side of the armored vehicle. One of the robbers came around and tried multiple

4

times to grab her gun out of her holster but was unsuccessful. Another male was yelling "hurry" and "let's go." As soon as S.G. heard the doors shut and the vehicle start to drive off she ran inside other vehicle to grab her phone and call 911. During the robbery S.G. was in fear for her life.

15. Suspect 1 was wearing a dark multi-color jacket that possibly has a black hood, a black balaclava, blue jeans, light colored shoes, gloves, and was carrying an AK-47. An image of suspect 1e is located below:



16. Suspect 2 was wearing a dark color hooded jacket or sweatshirt, had some type of material over their nose and mouth, some type of green shirt underneath their dark top, blue Nike sweat pants, gloves, dark colored shoes, and was carrying a hand gun, and flex cuffs. An image of suspect 2 is located below:



5

SW_00000313

17.    Suspect 3 was wearing a dark colored Coca-Cola sweatshirt, had some type of material covering most of their nose and mouth, dark colored pants, gloves, some type of camouflage shorts under their pants, dark colored shoes, and was carrying a handgun and dark blue bag.   An image of suspect 3 is located below:



18.    The surveillance video showed that Suspect #3 climbed into the back of the Brinks truck carrying a blue bag without any writing or logos on it.  The surveillance video showed Suspect #3 climb out of the back of the Brinks truck carrying a blue bag with "Brinks" written on it in distinctive white lettering.  The blue bag with "Brinks" labeled on it appeared to be full of money.  The plain blue bag was recovered as evidence.  Your Affiant later submitted the plain blue bag as evidence and submitted to the Denver Crime lab for DNA testing.



19.    On October 31, 2019, Members of the Federal Bureau of Investigation released surveillance video of the robbery to the local media in the Denver Metropolitan area in order to

6

generate anonymous tips or any member of the community with potential information about the robbery to contact Denver Metro Crime Stoppers or to contact the Rocky Mountain Safe Streets Task Force.

20.     On October 31, 2019, Your Affiant learned that a Brinks armored truck driver had been shot and killed during a robbery on October 24, 2020, in Houston, Texas. Your Affiant learned that the method of operation and weapons used in the Houston murder and robbery were similar to the method of operation and weapons used by the suspects who committed the robbery at 5201 S Yosemite St on October 30, 2020.

21.     On November 1, 2019, the suspect vehicle used to commit the robbery at 5201 S Yosemite St, a 2015 Nissan pathfinder with VIN: 5N1AR2MN1FC687424 was recovered less than one mile away from 5201 S Yosemite St on Park Terrace Drive in Greenwood Village. The vehicle was secured in a vehicle processing bay at the Greenwood Village Police Department. On November 6, 2019, Your Affiant obtained a search warrant to search the vehicle for evidence that could identify the suspects.

22.     On November 6, 2019, your affiant processed the vehicle with Greenwood Village Police Detective Tom Fanta and Greenwood Village Crime scene Investigator Burkhalter. Among the items recovered was the packaging for a log chain.

### Houston / Lake Charles ATM Incident

23.     On November 21, 2019, Your Affiant learned that members of the Houston Police Department were conducting surveillance on a person of interest in the Houston murder and robbery case that occurred on October 24, 2019. Your Affiant learned that persons of interest were followed to Lake Charles, Louisiana where they were observed attempting to steal an Automatic Teller Machine by pulling it out of business with a chain. The following persons

7

SW_00000315

were arrested: Rodney Hill, Jamaul Hunt, Don Tyrone, Harold Oliver, Aje Carter, Quaylon Brown, Javarion Davis, and Reginald Simmons. Your affiant learned that members of the Lake Charles Police Department seized several cell phones from the person arrested. Your Affiant learned that the Lake Charles Police Department, Houston Police Department and Federal Bureau of Investigation were planning to obtain search warrant to extract and analyze the data from the cell phones.

24.     On December 12, 2019, your affiant learned from Special Agent Jeffrey Coughlin, assigned to the Houston Office of the Federal Bureau of Investigation, that data had been extracted from the phones seized by the Lake Charles Police Department. One of the phones was seized from Quaylon upon his arrest in Lake Charles. Special agent Coughlin related that on October 27, 2019, Quaylon Brown was involved in a text message conversation with David Taylor. The telephone number for Quaylon Brown's phone was (832)807-3156 and David Taylor's telephone number was (281) 409-9818. Your Affiant previously received information from Special Agent Coughlin that David Taylor was called "Roun" by Quaylon Brown and his phone number was (281) 409-9818. Your Affiant searched open source records and found that (281) 409-9818 listed to a Verizon wireless phone in the name of David Taylor.

**Quaylon Brown Phone Extraction**

25.     Quaylon Brown: "what ya got going" David Taylor: I'm in Denver". Brown sent Taylor a calendar with airline prices for flights from Houston to Denver. David Taylor: "lil bro just got a flight at 5 so,ehting tomorrow—then ride back with me". Quaylon Brown: "when we coming back?" David Taylor: "Dk bro. when the job done. Shouldn't be longer than a week". There was another text message conversation between Quaylon Brown and David Taylor on the evening of October 30, 2019. David Taylor: "I'm on the way back home. Shit was trash

8

SW_00000316

honestly. Way better cars in Houston. Well better and easier opportunities. I got you tho. Ima pull up on you"

26.     On January 10, 2019, Special Agent Peterson received a report regarding the data extraction of an Apple I-Phone seized from Quaylon Brown 08/17/1991 by Lake Charles Police Officers after his arrest on November 21, 2019. Your affiant reviewed a copy of the report. There were text message logs in the report. The report also included photographs and at videos that were extracted from the phone. The phone number associated with the I-phone seized from Quaylon Brown was (832)807-3156 and the owner identification of the phone stated "Quaylon's I-phone".

27.     The first group of text messages were between (281)716-0438 on November 3, 2019, at 9:00 p.m. and 10:16 p.m. There was a text message from (281)-716-0438 to Quyalon Brown that stated "I seen a video that look like y'all..if ppl talking and rumor spreads to the wrong ears…you know the rest"

28.     There was a text message on October 24, 2019, at 8:51 p.m. from Quaylon Brown to (832) 606-4449 that stated, "I suppose to leave for Denver tonight".

29.     There was a series of text messages between Quaylon Brown and (832) 425-3156 from October 22, 2019, at 12:24 a.m. and October 24, 2019 at 3:09 p.m. A computer search of open source records for (832)425-3156 showed that the number listed to Davesha Franklin. The conversation appeared to be about Quaylon Brown asking Davesha Franklin to use her vehicle for "work". The person texting from Quaylon's I-phone asked if he could add darker tint to Davesha Franklins vehicle so that nobody could see him. During the conversation, the person texting from Qauaylon's I-Phone offered the person texting from Davesha Franklin's phone 10%, then 15%, of "whatever I make" to use the vehicle. Your

9

Case 1:20-sw-00063-KLM *SEALED* Document 1 Filed 06/04/20 USDC Colorado Page 15 of 39

Affiant was aware that the Houston Police Department and the F.B.I. are investigating an armed robbery of a Brinks Truck that occurred in Houston on October 24, 2019, during which a Brinks employee was shot and killed. Your Affiant was aware that the getaway vehicle used by the suspects to the fled the scene of the murder in Houston on October 24, 2019, was a newer model, black Chevrolet Impala. A search of Texas Motor Vehicle records showed that Davesha Franklin 08/11/1990 was the registered owner of a 2018 Chevrolet Impala, black in color, with Texas license plate LZJ295.

30. The last message was from Quaylon Brown to (832)425-3156 and stated "I finna come switch out cars n go get mine finally". This message was after murder and robbery of the Brinks employee in Houston on October 24, 2019.

31. There were a series of text message between Quaylon Brown and (832)706-6601 between October 24, 2019 and October 29, 2019. A search of open source records showed that (832)706-6601 listed to Rejhae Alcorn, who was possibly the mother of one of Quaylon Brown's children. There was a message at 8:18 a.m. on October 28, 2019, that stated "im finna catch my flight to Denver in a hr".

32. There was an image of an Instagram post by "grindboy1000" stating that he was at the Crown Plaza Denver. The image was sent from Quaylon Brown's phone at 9:41 p.m. on October 27, 2019.

33. There was a message from David Taylor to Quaylon Brown October 27, 2019 that stated, "I'm in Denver".

34. There was an image of an Instagram post by "grindboy1000 #Crowne Plaza" Denver stating that he was at the Crowne Plaza Denver. Your affiant recognized the location of the picture to be the sidewalk at 499 15th St, the parking lot located across the street from

10

the Crown Plaza at 1450 Glenarm St in the City and County of Denver. The caption under the image stated "grindboy1000 Rain Sleet or Snow (snowflake emoji) For The Dough #denvercolorado". The face of the person in image could not be seen. The shoes worn by the person in the image were consistent with the shoes worn by suspect #3 during the October 30, 2019 robbery in Greenwood Village, CO.





Sidewalk in front of 499 15th St



Suspect #3 shoe

11

35.     There were images of rifles and handguns extracted from Quaylon Brown's I-phone that were consistent with the weapons used during the robbery on October 30, 2019.







36.     There was a link to an ABC news video of the robbery on October 30, 2019, in Greenwood Village, CO posted on November 1, 2019, with several a conversation that (832)807-3156 participated in about the video. The comments stated "Its just that muthafuckin easy… perfect timing…shidd the guard know the drill. Aint finna die for that money". There was a comment from (832)807-3156 that stated, "big nuts I jus made it back from Denver tho what you wanna go do (laughing emoji)". There were numerous other comments made during the conversation that suggested that the person using (832)807-3156 participated in the robbery on October 30, 2019 at 5201 S Yosemite St.

### Beaumont Texas Attempted Armored Truck Robbery

37.     On January 14, 2019, Your Affiant learned that on January 13, 2019, Houston Police Officers conducted surveillance on two suspicious vehicles with false license plates that

12

were following armored trucks. The Houston Police Officers conducting the surveillance observed that the two vehicles followed an armored truck in the parking lot of a shopping center in Beaumont, TX. The vehicles backed into parking spaces next to the armored truck after the truck park. The movements of the vehicles were consistent with the methods used by suspects in recent armored truck robberies that occurred in Texas and Colorado in 2019. Fearing that an armed robbery was about to occur and an imminent risk of serious bodily injury or death to the armored truck driver and other persons in the shopping center, the Houston Police Officers conducting the surveillance requested additional uniformed officers to confront the occupants of the suspicious vehicles. Four occupants of the two vehicles were detained and identified to be: Jamarius Jones 01/23/1998, David Taylor 07/03/1991, Prentis Delaney 10/30/1990, and Coray Q Brown 09/27/1987. Multiple firearms, including semi-automatic handguns and assault rifles were recovered from the suspicious vehicles. Masks, gloves, and a bottle of rubbing alcohol were recovered from the suspicious vehicles. The rubbing alcohol would have likely been used by the suspects to wipe down the interior of the suspicious vehicles to eliminate latent prints and DNA evidence. When the 2015 Nissan Pathfinder used to commit the robbery of the Brinks truck was processed it appeared that the center console had been wiped down with some type of chemical.

38.     Your Affiant performed a subsequent video canvass of the surrounding area and along S.G.'s route preceding the robbery. He located a surveillance camera at Galaxy Liquors, 8960 E. Hampden Avenue in Denver. Galaxy Liquors is directly adjacent to Wells Fargo Bank at 8980 E. Hampden Avenue, which S.G.'s route serviced just prior to the Bank of Colorado in Greenwood Village. In the footage captured from that camera, Your Affiant observed two vehicles of note: what appeared to be (based on body style and distinctive wheel

13

SW_00000321

Case 1:20-sw-00063-KLM *SEALED* Document 1 Filed 06/04/20 USDC Colorado Page 19 of 39

type) a black 2012 to 2014 Nissan Maxima, and a beige or light-colored 2002 to 2009 Lexus GX SUV. Each vehicle appeared to enter the camera frame at either around the same time or shortly after the armored truck, loiter in the area without disembarking any passengers, and then exit the parking lot directly after or just before the armored truck. Your Affiant that the vehicles appeared to circle around the area of the armored truck, as if the drivers were keeping visual surveillance of the truck and surrounding area.

39.     With these vehicles in mind, Your Affiant re-reviewed the footage from Bank of Colorado that captured the truck robbery in Greenwood Village. Just after S.G. enters the bank and the Pathfinder arrives, the same (or an identical) black Maxima slowly circles the lot at least two times. It then drove off camera towards the south just prior to the robbery taking place. After the robbery, the Pathfinder fled along the same route taken by the Maxima.

 

*Maxima at 8960 E. Hampden Ave.*          *Maxima in front of 5201 S. Yosemite St.*

 

*Maxima in front of 5201 S. Yosemite St.*   *Maxima seen on ATM Camera behind 5201 S. Yosemite St.*

14

### Recovery and Search of Nissan Pathfinder

40.      On November 1, 2019, the suspect vehicle used to commit the armored truck robbery was recovered less than a mile away from the robbery scene.  The vehicle, a 2015 Nissan pathfinder bearing Vehicle Identification Number (VIN) 51AR2MN1FC687424, was recovered in the area of the 5300 block of Park Terrace Drive in Greenwood Village.   This area is directly south of the Bank of Colorado where the robbery occurred.  Investigation revealed that the Pathfinder had been stolen from a Dallas-area auto auction lot (Mannheim) in the days preceding the Greenwood Village robbery.  The suspect vehicle was secured in a vehicle processing bay at the Greenwood Village Police Department.  Your Affiant learned that on June 8, 2019, am armored truck robbery occurred in Houston, Texas.  The vehicle used to commit the June 8, 2019, was a black Ford Focus which was stolen from Manheim's auto auction lot in Dallas.  A blue stolen Ford Raptor pickup truck was recorded on video dropping off the suspect who stole the black Ford Focus.  When the blue Ford Raptor pickup truck was recovered, a credit card receipt from a TimeWise gas station was recovered.  The Visa credit card number, 4351680000180287, was identified as the account of Jimmy Garrison 12/15/1984.

41.      During a subsequent video canvass of the recovery neighborhood, investigators located a Ring cloud-based camera doorbell on a residence just north of where the Pathfinder was recovered.  Review of the camera's footage revealed that a few minutes after the armored truck robbery occurred, the Pathfinder is seen fleeing southbound on Park Terrace Drive directly in front of the camera.  Within minutes, what appears to be the same black Nissan Maxima is seen passing the camera from the opposite direction, headed back northbound on Park Terrace

15

Drive. Your Affiant concluded that the Maxima had staged in the area and had likely driven the suspects away after they abandoned the Pathfinder.

42.     On November 6, 2019, Your Affiant obtained a search warrant to search the vehicle for evidence that could identify the suspects. On November 6, 2019, Your Affiant processed the vehicle with Greenwood Village Police Detective Tom Fanta and Greenwood Village Crime Scene Investigator Burkhalter. Your Affiant noted that many surfaces in the car appeared to have been wiped down with a chemical or cleaning solution of some sort, making latent print or DNA recovery difficult or impossible. Among the items recovered was the packaging for a log chain.

### Houston Robbery/Murder, Lake Charles ATM Incident, Identification of Brown and Taylor

43.     On October 31, 2019, the FBI released surveillance video of the robbery to the local media in the Denver Metropolitan area in order to generate anonymous tips or to encourage any member of the community with potential information about the robbery to contact Denver Metro Crime Stoppers or to contact the FBI. This footage eventually gained nationwide media attention.

44.     Shortly thereafter, Your Affiant learned that a Brinks armored truck driver had been shot and killed during a robbery on October 24, 2019, in Houston, Texas. Your Affiant eventually learned that the weapons and method of operation (including the use of "follow" vehicles) used in the Houston murder and robbery were similar to the method of operation and weapons used by the suspects who committed the robbery in Greenwood Village on October 30, 2019.

16

SW_00000324

45.     On November 21, 2019, Your Affiant learned that members of the Houston Police Department had conducted surveillance on and arrested several persons of interest in the Houston murder and robbery case that occurred on October 24, 2019.  TFO Monahan learned that these persons of interest were covertly followed to Lake Charles, Louisiana, where they were observed attempting to steal an Automatic Teller Machine (ATM) by pulling it out of a business with a log chain.  Your Affiant recalled the recovery of the log chain packaging in the Pathfinder shortly after the Greenwood Village robbery.

46.     The following persons were arrested in the Lake Charles incident: Rodney Hill, Jamaul Hunt, Don Tyrone, Harold Oliver, Aje Carter, Quaylon Brown, Javarion Davis, and Reginald Simmons.  TFO Monahan learned that investigators with the Lake Charles Police Department seized several cell phones from the arrestees.  Your Affiant learned that the Lake Charles Police Department, Houston Police Department, and the Houston Division of the FBI were planning to obtain search warrants to extract and analyze the data from the cell phones.

47.     On December 12, 2019, Your Affiant learned from Houston FBI Special Agent (SA) Jeffrey Coughlin that data had been extracted from the phones seized by the Lake Charles Police Department.  One of the phones was seized from Quaylon Brown upon his arrest in Lake Charles.

48.     SA Coughlin relayed to Your Affiant that on October 27, 2019, (a few days before the Colorado robbery) Quaylon Brown was involved in a text message conversation with an individual named "Roun" in Quaylon Brown's contact list.  "Roun's" telephone number was (281) 409-9818.  Using open source records, subscription services, and law enforcement databases, investigators were able to determine that this phone number listed to David Taylor.

17

SW_00000325

49.     Your Affiant learned that on October 27, 2019, Quaylon Brown had sent a message to David Taylor asking, "what ya got going." David Taylor replied, "I'm in Denver". Brown then sent Taylor a calendar with airline prices for flights from Houston to Denver. David Taylor stated, "lil bro just got a flight at 5 so,ehting tomorrow—then ride back with me". Quaylon Brown asked, "when we coming back?" David Taylor replied, "Dk bro. when the job done. Shouldn't be longer than a week".

50.     There was another text message conversation between Quaylon Brown and David Taylor on the evening of October 30, 2019. David Taylor stated, "I'm on the way back home. Shit was trash honestly. Way better cars in Houston. Well better and easier opportunities. I got you tho. Ima pull up on you".

51.     On January 10, 2020, Denver FBI SA Donald Peterson received a copy of the report regarding the data extraction of the aforementioned Apple iPhone seized from Quaylon Brown by Lake Charles Police Officers after his arrest on November 21, 2019. TFO Monahan reviewed a copy of the report. There were text message logs in the report. The report also included photographs and videos that were extracted from the phone. Your Affiant verified phone number associated with the I-phone seized from Quaylon Brown was (832) 807-3156, and the owner identification of the phone stated "Quaylon's iPhone."

52.     Your Affiant observed a text message on October 24, 2019, (about a week before the Denver Brinks robbery) at 8:51 p.m. from Quaylon Brown to (832) 606-4449 that stated, "I suppose to leave for Denver tonight".

18

SW_00000326

53.     Your Affiant observed text messages Quaylon Brown exchanged with (281) 716-0438 on November 3, 2019, (a few days after the robbery) between 9:00 p.m. and 10:16 p.m. One message from that number to Quaylon Brown stated, "I seen a video that look like y'all..if ppl talking and rumor spreads to the wrong ears…you know the rest".

54.     Your Affiant observed a series of text messages between Quaylon Brown and (832) 425-3156 between October 22, 2019, at 12:24AM and October 24, 2019, at 3:09PM.  An open source records search of (832) 425-3156 showed that the number listed to Davesha Franklin.  The conversation appeared to be about Quaylon Brown asking Davesha Franklin to use her vehicle for "work".  Quaylon Brown asked if he could add darker tint to Davesha Franklin's vehicle so that nobody could see him.  During the conversation, Quaylon Brown offered Davesha Franklin 10%, then 15%, of "whatever I make" to use the vehicle.

55.     Your Affiant recalled that the Houston Police Department and the Houston FBI Division were investigating an armed robbery of a Brinks armored truck that occurred in Houston on October 24, 2019, during which a Brinks employee was shot and killed.  TFO Monahan was aware that the getaway vehicle used by the suspects to flee the scene of that robbery and murder was a newer model black Chevrolet Impala.  A search of Texas Department of Motor Vehicle records showed that Davesha Franklin was the registered owner of a black 2018 Chevrolet Impala, bearing Texas license plate LZJ295.  TFO Monahan noted that the last message was from Quaylon Brown to Davesha Franklin stated "I finna come switch out cars n go get mine finally".  This message was sent after murder and robbery of the Brinks employee in Houston on October 24, 2019.

19

56.     Your Affiant observed a series of text messages between Quaylon Brown and (832) 706-6601 between October 24, 2019 and October 29, 2019.  An open source records search showed that (832) 706-6601 listed to Rejhae Alcorn, who Your Affiant believed is possibly the mother of one of Quaylon Brown's children.  There was a message at 8:18AM on October 28, 2019, that stated "im finna catch my flight to Denver in a hr".

57.     Your Affiant observed an image of an Instagram post by "grindboy1000" stating that he was at the Crown Plaza Denver. The image was sent from Quaylon Brown's phone at 9:41PM on October 27, 2019.

58.     Your Affiant observed the aforementioned conversation with David Taylor on October 27, 2019, that began with David Taylor stating he was in Denver.

59.     Your Affiant observed an image of an Instagram post by "grindboy1000" stating that he was at the Crowne Plaza Denver.  TFO Monahan recognized the location of the picture to be the sidewalk in front of 499 15th Street. This address is the parking lot located across the street from the Crown Plaza at 1450 Glenarm Street in Denver.  The caption under the image stated, "grindboy1000 Rain Sleet or Snow (snowflake emoji) For The Dough #denvercolorado." The face of the person in the image could not be seen.  The shoes worn by the person in the

20

image were consistent with the shoes worn by Suspect #3 during the October 30, 2019, robbery

in Greenwood Village, Colorado.





Sidewalk in front of 499 15th St



Suspect #3 shoe

21

SW_00000329

60.     Your Affiant observed images of rifles and handguns extracted from Quaylon

Brown's iPhone that were consistent with the weapons used during the robbery on October 30,

2019, in Greenwood Village, Colorado.





61.     Your Affiant observed a group chat on the phone that included Quaylon Brown

and several other individuals.   In the group chat, on November 1, 2019, someone posted a link to

an ABC News video of the Greenwood Village, Colorado, Brinks truck robbery.    Quaylon

Brown participated in the chat.   One of the comments stated, "Its just that muthafuckin easy…

perfect timing…shidd the guard know the drill. Aint finna die for that money".    There was a

comment from Quaylon Brown that stated, "big nuts I jus made it back from Denver tho what

you wanna go do (laughing emoji)".   There were numerous other comments made during the

conversation that suggested that Quaylon Brown participated in the Greenwood Village Brinks

robbery.

22

**Beaumont, Texas, Attempted Armored Truck Robbery**

62.     On January 14, 2019, Your Affiant learned of the following: On January 13, 2019, Houston Police Department investigators conducted surveillance on two suspicious vehicles with false license plates that were following armored trucks. The HPD investigators conducting the surveillance observed that the two vehicles followed an armored truck in the parking lot of a shopping center in Beaumont, Texas. The vehicles backed into parking spaces next to the armored truck after the truck parked.

63.     The movements of the vehicles were consistent with the methods used by suspects in recent armored truck robberies that occurred in Texas and Colorado in 2019. Fearing that an armed robbery was about to occur, and due to an imminent risk of serious bodily injury or death to the armored truck driver and other persons in the shopping center, the HPD surveillance officers requested additional uniformed officers to confront the occupants of the suspicious vehicles. Four occupants of the two vehicles were arrested and are now identified as David Taylor, Jamarius Jones, Prentis Delaney, and Coray Q Brown. Multiple firearms, including semi-automatic handguns and assault rifles, were recovered from the scene of the arrest.

64.     In addition, masks, gloves, and a bottle of rubbing alcohol were recovered from the arrestees' vehicles. Your Affiant recalled that when the Nissan Pathfinder used in the commission of the Greenwood Village Brinks robbery was recovered and processed, it had appeared that the center console had been wiped down with some type of chemical, presumably to destroy latent print and DNA evidence. Your Affiant concluded that the rubbing alcohol recovered in the vehicles in the Beaumont, Texas, arrests would have likely been used for the same purpose.

23

### Search Warrant for and Analysis of David Taylor Call Detail Records

65.     Your Affiant sought and was granted a search warrant to obtain David Taylor's Call Detail Records (CDRs) with historical location data for his phone number, (281) 409-9818. Your Affiant received the records pursuant to the warrant on January 13, 2019. In an initial triage of the records, Your Affiant observed that David Taylor's device used cell towers and sectors consistent with the device traveling from Houston to Denver on or around October 27, 2019. The device also used cell towers and sectors consistent with being in the area of 5201 S. Yosemite St. in Greenwood Village, Colorado, at or around the time of the Brinks truck robbery on October 30, 2019. As of the writing of this affidavit, no formal location analysis has yet been conducted.

### Identification of Justin White and Nissan Maxima

66.     Your Affiant also examined the phone numbers that David Taylor had contact with while he was in Denver. Investigators have long suspected that the robbers would have a local confederate who assisted and facilitated their crimes. He conducted open records, subscription-based service, and law enforcement database searches on the most-dialed phone numbers on David Taylor's CDRs. One of the numbers, (281) 733-9616, listed to a Justin White. Justin White has an extensive history of pawn transactions in the Houston area dating back to 2018. However, on October 17, 2019, he conducted a pawn transaction in Aurora, Colorado. During that transaction, he presented a Texas driver's license, but listed a local address as his residence. The address Justin White provided was 9888 E. Vassar Drive in Denver, Colorado.

67.     Your Affiant conducted law enforcement database searches on Justin White. He found that Justin White is registered owner of a black 2014 Nissan Maxima, bearing Texas

24

Case 1:20-sw-00063-KLM *SEALED* Document 1 Filed 06/04/20 USDC Colorado Page 30 of 39

license plate KMY7221. He provided this information to me. Your affiant conducted further searches for records related to this license plate, including law enforcement and commercial License Plate Recognition (LPR) databases. LPR systems consist of specialized scanning cameras, either mounted at stationary positions or on vehicles, that catalog and photograph license plates that pass through their field of view. LPR systems are commonly used by vehicle repossession companies, law enforcement, and other public and private entities for informational purposes about vehicle traffic in a particular area. In his review of LPR data, your affiant observed that the Maxima seemed to be based in the Houston and Corpus Christi, Texas, areas throughout 2019 until early September. On September 16, 2019, the Maxima begins to register on multiple law enforcement LPR cameras throughout Aurora on almost a weekly basis. Additionally, commercial (likely repossession company) LPR scanners registered the Maxima on three separate occasions at the Vassar Drive apartment complex, most recently on March 3, 2020.

68. Your affiant also learned that that an armed robbery of a Loomis armored truck occurred at 150 West El Dorado Street in Houston, Texas, on the afternoon of September 5, 2019. The suspects used a stolen white van and a 2017 or 2018 white Kia forte. The white van pulled up to the Loomis truck and three armed suspects exited the stolen van armed with guns and robbed the operator of the Loomis truck. The suspects fled in the stolen white van and abandoned it nearby. The suspects then got into the white Kia to flee the area.

69. The method of operation and physical description of the suspects in the September 5, 2019, incident matches the robbery at 5201 S Yosemite St. on October 30, 2019. LPR databases place Justin White's Nissan Maxima in the Houston area on the day immediately before the Loomis truck robbery and the day immediately after. The September

25

4, 2019 license plate reader capture of the Nissan Maxima was at 11911 Gulf Freeway in Houston, Texas. Gulf Freeway is also known as Interstate 45. 11911 Gulf Freeway is only seven miles away from 150 W. El Dorado Blvd.

70. On March 6, 2020, Commerce City Police Detective and Rocky Mountain Safe streets Task Force Officer Michael Kim drove to the area of 9888 E. Vassar Drive to locate and make visual contact with the Maxima. TFO Kim found it parked in the same area as all of the commercial LPR scans. Upon seeing it, TFO Kim recognized it as apparently, the same Maxima seen in surveillance camera footage on October 30, 2019, trailing the Brinks armored truck prior to the robbery, circling the scene of the robbery just prior to its commission, and leaving the area where the robbery vehicle was abandoned minutes later.



*Justin White's Maxima Parked on Vassar Dr.*

71. Your affiant believes that the Maxima seen trailing the Brinks truck minutes prior to the robbery is the same vehicle seen later circling the robbery scene. It is also the same vehicle seen picking up the robbers after they abandoned their other vehicle. Based upon his investigation, your affiant believes that this Maxima is the vehicle owned by Justin White.

26

72.     On March 11, 2020, TFO Kim sought and was granted a search warrant to install a GPS tracker on the Maxima. The warrant was issued by the United States District Court for the District of Colorado, and was signed by the Hon. Magistrate Judge Michael E. Hegarty. Investigators tried numerous times to locate the Maxima after the issuance of the warrant in order to install the tracker, but were unsuccessful. Subsequent LPR searches indicated that the Maxima had traveled down to Texas.

73.     On March 23, 2020, TFO Kim sought and was granted a search warrant to obtain historical and prospective CDR records with location data for Justin White's phone, along with prospective GPS and Pen Register/Trap and Trace (PRTT) device data. The warrant was issued by the United States District Court for the District of Colorado, and was signed by the Hon. Magistrate Judge N. Reid Neureiter.

74.     On March 26, 2020, while conducting physical surveillance on Justin White's apartment, investigators located the Maxima parked inside the residential parking garage of Justin White's apartment building, located at 9888 E. Vassar Drive, Building G. This garage is communal, not exclusive to Justin White, and serves all residents of Building G. TFO Kim sought and was granted a refreshed search warrant to install a GPS tracker on the Maxima. The warrant was issued by the United States District Court for the District of Colorado, and was signed by the Hon. Magistrate Judge N. Reid Neureiter. Immediately upon receipt of the warrant, investigators successfully placed a covert GPS tracker on the vehicle.

75.     TFO Kim observed that Justin White's PRTT indicated he was in Houston, TX, during the week of April 18, 2020. His vehicle tracker, however, showed that the Maxima was still parked at the Vassar Dr. address. On April 27, 2020, your affiant observed

27

SW_00000335

that Justin White's PRTT indicated he was back in the Denver area. In addition, his vehicle tracker indicated that the Maxima was traveling throughout the cities of Denver and Aurora.

### Investigation of Garrison

76.     TFO Kim requested that Aurora Police Department (APD) uniformed officers make contact with the vehicle in the area of E. 6th Ave. and Helena St. and that FBI investigators would respond to impound the vehicle for a search pursuant to a warrant. Just before APD contacted the vehicle, Justin White and another male, identified as Jimmy Garrison 12/15/1984, exited a nearby store and walked towards the Maxima. Officers intercepted them just as White began to get into the driver seat, and Garrison the passenger seat.

77.     Your affiant responded to the scene and verified that the Maxima appeared to be the same one depicted in the surveillance footage from the Brinks armored truck robbery that occurred in Greenwood Village on October 30, 2019. Your Affiant and TFO Kim attempted to speak with Justin White about the vehicle and its potential involvement in the robberies. White denied any knowledge, and declined to speak with investigators further. However, he became extremely agitated when he was not permitted to retrieve his cellular phone from the vehicle. He and Garrison were not physically detained at any point, and they were permitted to leave the area while investigators sealed and impounded the vehicle for transport to the Denver Police Vehicle Impound Facility. While retrieving the vehicle's keys from the center console (where they were deposited by APD officers after being removed from White), your affiant observed that the vehicle contained several personal items, clothing, and a phone in the center cup holder.

28

78.    TFO Kim contacted investigators with HPD assigned to the Houston FBI Violent Crimes squad.  They advised that Jimmy Garrison's name was related to the investigation of an armored car robbery that occurred on June 8, 2019.  In that case, a Garda armored car driver was shot in the arm during a robbery.  The suspects fled in a stolen vehicle.  That stolen vehicle eventually led investigators to another stolen vehicle, found to contain retail receipts with Garrison's name on them.  This second stolen vehicle containing the receipts was stolen from the same Mannheim auto auction lot where the Pathfinder (from the Greenwood Village robbery) had been stolen from.

79.    On or about May 6, 2020, TFO Kim applied for and was granted a search warrant to search the 2015 Nissan Maxima with Texas License Plate KMY7221 which was secured at the Denver Sheriff Vehicle impound facility.

80.    On May 7, 2020, Your Affiant and TFO Kim search the 2015 Nissan Maxima.  A card for a self-storage unit at Life Storage 11951 E Mississippi Ave, Aurora, CO was recovered inside the vehicle.    The card had handwritten on it Building 20, floor 1, unit 2079.  A receipt from Chase bank for a $4,500 cash deposit on November 4, 2019, was recovered from the vehicle.  The receipt was for an account ending in 7559.  Additional Chase bank records for account in the name of Justin White with account number 5783377559 were recovered from the vehicle.  Receipts for approximately $2,500 worth of purchases made between November 1, 2019 and November 6, 2019 were recovered from the vehicle.  Receipts for four $1,000 money transfers made at Walmart stores were recovered from the vehicle.

81.    On May 27, 2020, Your Affiant, received a Denver Crime Lab report from Forensic Scientist Eric Duval.  The report stated that a mixture of D.N.A. was found on the blue bag recovered from the Brinks truck.  The report stated that D.N.A from a major male

29

SW_00000337

contributor was recovered from the bag. The report stated that the D.N.A. profile from the major male contributor was entered into the Combined D.N.A. Index System and received a match to Texas offender Jimmy Garrison 12/15/1984, F.B.I. # 973927PC3.

82.      The Denver Crime Lab report stated that the qualifying offense that Jimmy Garrison's D.N.A. was entered into the system for was Aggravated Assault with Deadly Weapon. A records search of Jimmy Garrison's criminal history showed conviction for Aggravated Assault with a Deadly Weapon and Aggravated Robbery in 2011.

83.      Your Affiant re-reviewed the surveillance video of the robbery at 5301 S Yosemite St and still images of the suspects. Jimmy Garrison matched the general physical description of Suspect #3, approximately 5'08" and 220', with a heavy build.

84.      Your Affiant reviewed call detail records for David Taylor's Verizon Wireless number of (281) 409-9818 and call detail records for Justin White's A.T.&T. number of (281)733-9616 and observed that there were several hundred communications between (787) 988-9344. (787) 988-9344 listed to a Sprint wireless account in the name of Jimmy Garrison.

85.      Justin White's 2015 Nissan Maxima was seized on April 27, 2020. Jimmy Garrison was identified as a passenger in the Nissan Maxima prior to it being seized. Call detail records between April 27, 2020 and May 1, 2020, for Jimmy Garrison's (787) 988-9344 Sprint wireless telephone number could provide evidence necessary to continue the investigation of multiple armored truck robberies that occurred in Texas and Colorado. Justin White's telephone was inside the Nissan Maxima when it was seized. Jimmy Garrison's telephone was not seized. Justin White and Jimmy Garrison could have used Jimmy Garrison's telephone to contact other suspects who have not been identified.

SW_00000338

**Sprint Corporation**

86.      Your Affiant contacted the Number Portability Administration Center on
February 14, 2020 and verified that (787) 988-9344 is an active subscriber line service by
Sprint. Your Affiant searched open source records for (787) 988-9344 and found that it was
listed to a Sprint account in the name of Jimmy Garrison.

87.      In my training and experience, I have learned that Sprint is a company that
provides cellular telephone access to the general public. I also know that providers of cellular
telephone service have technical capabilities that allow them to collect and generate
information about the locations of the cellular telephones to which they provide service,
including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site
data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II
data provides relatively precise location information about the cellular telephone itself, either
via GPS tracking technology built into the phone or by triangulating on the device's signal
using data from several of the provider's cell towers. Cell-site data identifies the "cell
towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal
from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which
the telephone connected. These towers are often a half-mile or more apart, even in urban
areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a
wireless device does not necessarily serve every call made to or from that device.
Accordingly, cell-site data is typically less precise that E-911 Phase II data.

31

Case 1:20-sw-00083-KLM *SEALED* Document 1 Filed 06/04/20 USDC Colorado Page 37 of 39

88.     Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available.

89.     Based on my training and experience, I know that Sprint can collect historical cell-site data about the Target Cell Phone, as defined in Attachment A hereto. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

90.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users, may place the target within the proximity of the scenes of the crimes, and may assist in the identification of a fugitive, of co-conspirators, and/or victims.

## AUTHORIZATION REQUEST

91.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

32

92.    I further request that the Court direct Sprint to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on Sprint, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

93.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **30 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

94.    I further request that this Court order Sprint not to disclose the existence of the warrant for a period of one year from the date of issuance.  The requested warrant, if disclosed, could result in the suspect or co-conspirators fleeing from prosecution, destroying

33

evidence; intimidating witnesses or otherwise seriously jeopardizing the ongoing

investigation. See 18 U.S.C. § 2705(b)(2), (3), (5).

Respectfully submitted,

*s/ William P. Monahan Jr.*
William P. Monahan Jr.
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me this  4th  day of June, 2020.

THE HON. KRISTEN L. MIX
UNITED STATES MAGISTRATE JUDGE

**Reviewed and Submitted by Brian Dunn, Assistant United States Attorney.**

34

SW_00000342