IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-CR-0014-PAB

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**JIMMY GARRISON**,

    Defendant.

---

**MOTION TO SUPPRESS UNLAWFULLY OBTAINED EVIDENCE (UNLAWFUL STOP AND DETENTION AND SEIZURE OF GARRISON'S IPHONE) AND REQUEST FOR EVIDENTIARY HEARING**

---

Defendant, Jimmy Garrison, through counsel and pursuant to Fed. R. Crim. P. 12(b)(3)(C) and 41(h) and the Fourth Amendment of the U.S. Constitution, respectfully moves the Court to conduct a pretrial evidentiary hearing for the purpose of determining the issues raised by this motion and for entry an Order suppressing as fruit of the poisonous tree all evidence, including a yellow iPhone, its contents, and all evidence seized as the result of the arrest of Mr. Garrison.[1] As grounds:

**I.    Background**

On October 30, 2019, an armored car robbery occurred which is the basis of the charges in this case.

---

[1] In the interests of judicial economy and to reduce redundancy, the defense does not re-cite the legal principles set forth in the motion to suppress cell phone records (Doc. No. 136).

On February 2, 2021, an indictment was issued against Jimmy Garrison. ¶74, SW_00000408. On May 26, 2021, at 6:38 P.M., Defendants Justin White and Jimmy Garrison were pulled over by Wyoming State Trooper David Noland for unknown reasons. Mr. White was the driver of a pickup truck that had a small utility trailer, and Mr. Garrison was the passenger. Trooper Noland did not issue Mr. White a ticket, but instead proceeded to conduct a lengthy inspection of the truck. Trooper Noland detained Mr. Garrison longer than was reasonable for the traffic stop. Long after a reasonable period to issue any traffic citation had expired, Trooper Noland required Mr. Garrison to provide his identification, to which Mr. Garrison complied.

Trooper Noland ran Mr. Garrison's identification and discovered the federal warrant issued in this case, resulting in Mr. Garrison's arrest. After Mr. Garrison's arrest, Cheyenne Police Officer Laura Michael seized the yellow iPhone and placed it into evidence at the Cheyenne Police Department. ¶76, SW_00000409. Mr. Garrison was transported to Colorado for the federal warrant.

The iPhone was shipped to the Denver FBI Field Office and stored at the Rocky Mountain Safe Streets Task Force Office prior to the warrant to search Garrison's iPhone ever being requested or subsequently issued by Judge Hegarty. ¶76, SW_00000409.

As a result of Mr. Garrison's arrest, on June 2, 2021, the government sought and obtained a search warrant to obtain the buccal swabs from Mr. Garrison's mouth. SW_000357.

On June 21, 2021, nearly a month after Mr. Garrison's arrest, the government also sought and obtained a search warrant for the iPhone. SW_00385 (attached as

Appendix A). The government has since searched for and downloaded data from the phone. To date, the government has claimed the phone contains only two evidentiary items, which were photos of a Brinks truck dated 12/19/2019, a month and a half after the robbery, and a stock photo of a gun.



The defense moves to suppress these images and any other data to be gleaned from the iPhone, as the fruit of the illegal detention and subsequent seizure of evidence to be used in the trial of this case.

    II.    **Argument**

        **A.**    **Garrison has standing to challenge both his detention and the seizure of his iPhone.**

Mr. Garrison was a passenger in the truck that was stopped by the Wyoming Highway patrol (hereinafter "WHP"). Both he and Mr. White were detained while the truck was subject to a general search.

The Tenth Circuit, "has repeatedly recognized that although a defendant may lack the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, the defendant may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the [defendant's] illegal detention." *United States v. Lopez*, 849 F.3d. 921, 927 (10th Cir.

2017). A passenger does have standing to challenge the legality of the initial stop and prolonged detention. *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001).

> **B.     The WHP trooper unjustifiably prolonged the stop beyond the time necessary to complete the tasks incident to the mission, without reasonable suspicion to do so.**

A traffic stop of a vehicle is a seizure within the meaning of the Fourth Amendment. *United States v. Salas*, 756 F.3d 1196, 1200-01 (10th Cir. 2014). Such a stop is valid under the Fourth Amendment if it "is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995).

Not only must a traffic stop be justified at its inception, police actions during the stop, generally must be reasonably related in scope to the circumstances that initially justified it. *Lopez*, 849 F.3d at 925. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. *Id*. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id*.

Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." *Id*. at 355, citing *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). Such inquiries typically "involve checking the driver's license, determining whether there are outstanding warrants against **the driver,** and inspecting

4

the automobile's registration and proof of insurance." (Emphasis added). *Id*. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* A traffic stop prolonged beyond the time reasonably required to complete its mission is unlawful, and the stop may not be prolonged for the purpose of detecting evidence of ordinary criminal wrongdoing. *Id*. at 355-57.

Under *Rodriguez*, therefore, an unlawful seizure occurs when an officer (1) diverts from the traffic-based mission of the stop to investigate ordinary criminal conduct, (2) in a way that "prolongs" (i.e., adds time to) the stop, and (3) the investigative detour is unsupported by any independent reasonable suspicion." *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022). Even *de minimis* delays caused by unrelated inquiries violate the Fourth Amendment in the absence of reasonable suspicion. *Id*.; *see also Rodriguez, supra*.

In the instant case, it is unknown whether the initial stop was justified. The trooper, however, quickly determined that he wasn't going to issue Mr. White a ticket. Thus, the police encounter should have terminated as soon as he completed the ordinary inquiries / routine checks that satisfied the objectives of the traffic stop. *See*, *e.g.*, *United States v. Gorman*, 859 F.3d 706, 715 (9th Cir. 2017), *order corrected,* 870 F.3d 963 (9th Cir. 2017). This didn't happen, however.

Instead, the trooper continued and prolonged the traffic stop by conducting a full inspection of the entire truck. The extension of the stop went beyond ordinary inquiries and checks, and pursued checks and questioning that added time to the stop, weren't necessary and proper components of the traffic stop and, in fact, had nothing to do with

5

the any alleged traffic violation. This process prolonged the seizure of White, Garrison and the truck beyond the time reasonably required to complete the stop's mission. *See Frazier*, 30 F.4th at 1173 ("each minute the trooper spent arranging the dog sniff was time the citation-related tasks went unaddressed. Consequently, his actions necessarily prolonged the stop."). Importantly, this process meaningfully interfered with Mr. Garrison's freedom of movement and was the proximate cause of the computer search that uncovered the warrant.

The trooper did not have reasonable suspicion of criminal activity by White or Garrison when he prolonged the traffic stop. *See Frazier*, at 1179 (when reasonable suspicion is lacking at the "*Rodriguez* moment," the seizure remains illegal from that point forward). The illegality of this prolonged detention tainted all of the evidence that was subsequently obtained. *Id*. at 1180; *see also Gorman*, 859 F.3d at 716-17. Accordingly, the exclusionary rule should apply to suppress the iPhone recovered from the vehicle and the subsequent buccal swabs obtained from Garrison as fruit of the poisonous tree doctrine. *Id.*, citing *Wong Sun*, 371 U.S. at 484-86.

**C.  The seizure of Garrison's iPhone was not justified because no search warrant had issued, and the officers had no reason to believe it contained evidence of a crime**.

At the time law enforcement seized Garrison's iPhone, no search warrant had been sought or issued. Task Force Officers could have requested such a warrant as they did with the arrest warrant. Therefore, assuming the original stop and arrest were lawful (which Garrison does not concede), the subsequent seizure can only be justified if an exception to the warrant requirement exists.

**i.  The plain view exception does not apply.**

"In the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *United States v. Robinson*, 414 U.S. 218, 235 (1973).

However, the seizure of an item during such a search has its limits. In *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), the Court stated that in certain circumstances a warrantless seizure by police of an item that comes within plain view during their lawful search of a private area may be reasonable under the Fourth Amendment. *Id.*; *Arizona v. Hicks*, 480 U.S. 321, 323 (1987).

In order for an item to be seized pursuant to the plain view doctrine, law enforcement must have probable cause to believe the item to be seized is evidence of a crime or is contraband. *Id*. At the time of the seizure of Garrison's iPhone, the Trooper did not have probable cause to believe the phone was evidence of a crime nor was it contraband. As a result, the plain view doctrine affords the government no haven.

      ii.      **The seizure of the phone was not as a result of an inventory search.**

An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment, designed to effect three purposes: protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger. *See*, *e.g.*, *United States v. Haro-Salcedo*, 107 F.3d 769, 772-73 (10th Cir. 1997). However, inventory searches are reasonable only if conducted according to standardized procedures. *Id*. An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory. *Id*. at 773 (citing *Florida*

7

*v. Wells,* 495 U.S. 1, 4 (1990); *see also United States v. Thompson,* 29 F.3d 62, 65 (2d Cir.1994) ("The fruit of inventory searches, however, will be suppressed when the searching agents act in bad faith or solely for the purpose of investigation").

Here, law enforcement plainly seized the phone for investigatory rather than administrative purposes. Indeed, the phone was booked into *evidence*, not into property. Therefore, the evidence seized can not be admissible under an administrative search theory. *Haro-Salcedo*, 107 F.3d at 773.

### iii. The seizure of the phone was not a result of a search incident to arrest

The search incident to arrest exception does not apply to cell phones. *Riley v. California*, 573 U.S. 373, 401 (2014).

In some limited situations, law enforcement can perform a temporary seizure of property when faced with a plausible claim of specially pressing or urgent law enforcement need, i.e., "exigent circumstances." *Illinois v. McArthur*, 531 U.S. 326, 331 (2001); *United States v. Place,* 462 U.S. 696, 701 (1983) (the exigencies of the circumstances may permit temporary seizure without warrant). The exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case. *Riley,* 573 U.S. at 402. "[E]ven though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless seizure of a particular phone. "One well-recognized exception applies when 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable

under the Fourth Amendment.'" *Id*. (citing *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Mincey v. Arizona*, 437 U. S. 385, 394 (1978)).[2]

### D. The application for the search warrant was a bare bones application, and Mr. Garrison is entitled to a hearing under *Franks v. Delaware*.

The defense contends that the search warrant issued for the iPhone is supported by nothing more than a bare bones application, which does not establish a nexus between the phone and the suspected crime of robbery. In addition, Mr. Garrison argues that, if the court finds that the application on its face is supported by a showing of probable cause, then nevertheless he is still entitled to an evidentiary hearing to test the veracity of the contents of the supporting application. In other words, Mr. Garrison asserts that Det. Purdy, the affiant for the search warrant application, intentionally and knowingly, or with reckless disregard for the truth, omitted material information from the application, which, when re-examined, strip the warrant of any probable cause the court may have found. In addition, the defense asserts that the warrant was overbroad in that it authorized a general search of the iPhone.

"[P]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004) (quotation omitted). "[W]hether

---

[2] The seizure of the phone in this case was also not reasonable in terms of the length of time it was seized, three weeks, before a warrant was sought. See *United States v. Place*, 462 U.S. 696, 710 (1983) (90-minute detention of respondent's luggage is sufficient to render the seizure unreasonable; contrast, *United States v. Van Leeuwen*, 397 U.S. 249, 253 (1970) (holding 29-hour detention of mailed package reasonable given unavoidable delay in obtaining warrant and minimal nature of intrusion). Law enforcement here could have sought a warrant for the iPhone before the stop of Garrison, if it had probable cause to believe that it contained evidence of a crime, and certainly could have done so long before the three-week delay in this case.

information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id*. at 1207 (quotation omitted); *cf. United States v. Roach,* 582 F.3d 1192, 1202 (10th Cir. 2009) (evidence supporting reasonable suspicion was stale after 18 months); *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002) (10 months or so between the allegation and the warrant was stale). The circumstances of this case clearly demonstrate that the application was bereft of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210 (1932).

    The application supporting the search of the iPhone rests, if at all, on two evidentiary pillars. First, that there was probable cause to believe Mr. Garrison was Suspect #3 in the robbery. Second, that there was probable cause to believe that the iPhone seized more than a year and a half *after* the robbery contained evidence of that robbery or that material omissions or misrepresentations had been made.[3] The defense, however, contends that there was insufficient evidence to suspect a phone, seized over a year and a half after the offense in question, contained evidence of the crime, and that the affiant omitted critical information from the application.

    The application indicated the investigators identified the phone number (787) 988-9344 as being associated with Sprint wireless phone number in the name of Jimmy Garrison. ¶68, SW_00000408. The application fails to indicate, however, that the iPhone seized over a year and half later was associated with the phone number (787)

---

[3] The defense concedes the court found that probable cause existed for suspecting Garrison's involvement in the robbery based on the assertion that the grand jury indictment had already been issued.

988-9344, or that Mr. Garrison possessed a phone at the time of the robbery or when police approached him on April 27, 2020, 6 months after the robbery. ¶59-60, SW_00000406.

Prior to the application to search the iPhone, investigators had already obtained call detail records and location data for Garrison's phone, which showed no phone calls or text messages between October 28, 2019, and October 30, 2019, the day of the robbery. ¶72-73, SW_00000408. Further, cell tower data obtained from the records did not show Mr. Garrison being near the location of the robbery. *Id*. Thus, the evidence available to law enforcement, was that Garrison was not in communication, using his known cellphone, with the suspected participants in the robbery, nor was the phone shown to be near the crime.

The application further indicated that other suspected participants in the robbery did communicate with each other using a group chat the day before and after the day of the robbery using their cellphones. ¶40, SW_00000372. What was left out of the application was that Mr. Garrison's phone was *not* part of that group chat. Also, months before the application was authored, law enforcement officers had obtained data for both Mr. Taylor and Mr. White's phones. The officers suspected Taylor and White were involved in the robbery. Omitted from the application, however, was that Taylor and White communicated with each other throughout times surrounding the time of the robbery, but no calls or texts by those suspects were made to Mr. Garrison's phone number. As a result, the application did not establish or even allege that law enforcement had reason to believe a phone number identified as Garrison's or any

11

unidentified phone number that may have been Garrison's had communications with any of the suspects in the robbery.

The application articulated no factual basis for the affiant's speculative assertion that evidence from the October 30, 2019, robbery would be found on the iPhone, despite knowing that call records already obtained did *not* show Mr. Garrison in the area of the robbery or making any calls the day of the robbery from the number allegedly associated with him. ¶80, SW_00000410.

In the application for the warrant to search the phone, Det. Purdy states that the investigators identified the number (787) 988-9344 as being associated with Sprint wireless phone number in the name of Jimmy Garrison. ¶68, SW_00000408. Nowhere in the application, however, does it state that (787) 988-9344 is associated with a yellow iPhone, or that investigators knew the iPhone had Sprint cellular service.

In essence, what the application claims is that probable cause is based merely on a hunch that maybe Garrison's iPhone, which he possessed a year and a half after the crime in question, might have data connecting him to the crime, when his cell phone records did not establish such a showing.

### E. The search warrant was overbroad in its scope, and the application did not establish probable cause to search for all the items sought.

The warrant application states that criminals, "use cellular telephones to discuss and plan criminal exploits, and ultimately use cellular telephones to execute those plans. Among other things, actors in criminal incidents also regularly use cellular phones to facilitate their immediate flight, therefrom, to aid in the evasion of law enforcement in the days following the crime, and to research media coverage of their

12

exploits. . .” ¶78, SW_00000409. These general assertions do not support a showing that there is reason to believe that a search of Garrison's cellphone will provide any evidence of his involvement in criminal activity. The application then proceeds to state that the evidence being sought was communications, associations, location information, and attribution information. ¶79, SW_00000410. The application requests the court to authorize a search of the phone "without temporal limitations." ¶79, SW_00000410. The application then incorporates Attachment B, which in essence sought permission to review every piece of data on the phone. ¶79, SW_00000410. The application did not state why each category of data might contain evidence of a crime.

    The application requests a general search of the phone with the only limiting principle being that the items searched and seized must be pertaining to violations of the "Subject Offenses." The warrant is not limited to the time frame associated with the alleged offense, and seeks to allow law enforcement to search the entire contents of the phone, including for example: the entire internet search history, every call and text, all photos, all videos, all metadata, credit card information, financial information, cloud computing and caches and, as a catch all, "Any and all information, notes, software, documents, record, or correspondence, in any format and medium." ¶2, SW_00000414. This is not the particularization required by the Fourth Amendment.

    Det. Purdy's conclusory paragraph in the application for the search warrant is based entirely on speculation and, in sum, states that criminals use cell phones sometimes, cell phones store data, and therefore there might be a remote possibility that evidence could be located on the phone, despite no factual basis to support his conclusions.

### IV.     Conclusion

An evidentiary hearing is necessary to properly resolve this motion. This Court should conduct such a hearing and, thereafter, issue an Order suppressing the iPhone and its contents, and the buccal swabs subsequently obtained from Mr. Garrison.

Respectfully submitted,

s/Daniel J. Sears
Daniel J. Sears, PC
999 18th Street, Suite 3000
Denver, CO 80202
Phone: (303) 357-4639
djsearspc@aol.com

s/James Castle
Castle & Castle, PC
1544 Race Street
Denver, CO 80206
Phone: (303) 675-0500
jcastlelaw@gmail.com

_____
### CERTIFICATE OF SERVICE
_____

I hereby certify that on this 3rd day of October 2022, I served a true and correct copy of the foregoing to all parties via U.S. Court ECF filing.

s/James A. Castle
James A. Castle