# UNITED STATES DISTRICT COURT
for the
District of Colorado

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A yellow Apple iPhone with an unknown serial number and an unknown IMEI number (hereinafter and in Attachment B the "Device"), currently being stored in the secure evidence vault at the FBI Rocky Mountain Safe Streets Task Force office at 4624 Central Park Blvd., Suite 300, Denver, Colorado, 80238

Case No. 21-sw-687-MEH

## APPLICATION FOR A SEARCH WARRANT

I, Task Force Officer Jared Purdy, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the State and District of Colorado *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit
The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

X evidence of a crime;

X contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 18 U.S.C. §§ **1951 and 924(c)**, and the application is based on these facts:

X Continued on the attached affidavit, which is incorporated by reference.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Jared Purdy* .
*Applicant's signature*

Jared Purdy, Task Force Officer, FBI
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
X submitted, attested to, and acknowledged by reliable electronic means.

Date: 06/21/2021

Michael E. Hegarty
*Judge's signature*

City and state: Denver, CO

Michael E. Hegarty, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

A yellow Apple iPhone with an unknown IMEI number and an unknown serial number (hereinafter and in Attachment B the "Device"), currently being stored in the secure evidence vault at the FBI Rocky Mountain Safe Streets Task Force office at 4624 Central Park Blvd., Suite 300, Denver, Colorado, 80238.

Case 1:21-cr-00014-PAB Document 137-1 Filed 10/03/22 USDC Colorado Page 3 of 26

ATTACHMENT B

**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

For the device listed and described in Attachment A, the following items, that constitute evidence of the commission of, contraband, the fruits of crime, instrumentalities of, or flight from the violations of 18 U.S.C. §§ 1951 and 924(c) committed on or about October 30, 2019 as described in the accompanying affidavit **(hereinafter "Subject Offenses")**:

1. Any and all information, notes, software, documents, records, or correspondence, in any format and medium, pertaining to violations of **Subject Offenses**:

2. Any and all address books, names, and lists of names and addresses of individuals who may have been contacted by use of the device or by other means for the purpose of committing violations of **Subject Offenses**.

3. Any and all information, records, documents, invoices and materials, in any format or medium that concern any accounts with an Internet Service Provider pertaining to violations of **Subject Offenses**.

4. Any and all information, records, documents, invoices and materials, in any format or medium, that concern e-mail accounts, online storage, or other remote computer storage pertaining to violations of **Subject Offenses**.

5. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of **Subject Offenses** or that show who used, owned, possessed, or controlled the device.

6. Any and all information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of the device, or that aid in the identification of persons involved in violations of **Subject Offenses**.

7. Credit card information, bills, and payment records pertaining to violations of **Subject Offenses**.

8. Information about any internet usernames, online accounts, email, or the IP addresses accessed or utilized on the device.

9. Descriptions of time, date, locations, items, or events showing or tending to show the commission of or connecting or tending to connect a person to violations of **Subject Offenses**.

10. Evidence of who used, owned, or controlled the device to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

Case 1:21-cr-00034-WJM Document 137-1 Filed 10/03/22 USDC Colorado Page 4 of 26

11. Evidence of software that may allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

12. Evidence of the attachment to the device of other storage devices or similar containers for electronic evidence.

13. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device.

14. Evidence of how and when the device was used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

15. The telephone number, ESN number, serial number, and/or SIM card numbers of or contained in the device.

16. Passwords, encryption keys, and other access devices that may be necessary to access the device.

17. Contextual information necessary to understand the evidence described in this attachment.

18. Executing law enforcement personnel are authorized to depress the fingerprints and/or thumbprints of persons reasonably believed to be the user(s) of the device onto the Touch ID or fingerprint sensor of any Apple iPhone, iPad, or other Apple brand device, or other device that has a fingerprint sensor, in order to gain access to the contents of any such device. Law enforcement personnel may also depress the fingerprints and/or thumbprints of persons reasonably believed to be the user(s) of the device in order to gain access to applications on the device that may be locked with a fingerprint or thumbprint

DEFINITIONS:

19. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, JARED PURDY, being first duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. I am a Detective with the Denver (Colorado) Police Department and am currently assigned as a Task Force Officer (TFO) with the FBI Rocky Mountain Safe Streets Task Force. I have been a Denver Police Officer for over fourteen years and have conducted investigations of various offenses including: Robbery, Auto Theft, Domestic Violence, Assault, Burglary, and other persons and property crimes. I have received training and have experience in the in the use of investigative methods related to electronic, computer, and Internet-based crimes. I have general and specialized training in traditional methods of investigation, including but not limited to the general questioning of witnesses and suspects, polygraph examination, the review of phone and computer records, physical surveillance, and the detection and collection of physical evidence. I have investigative experience and have authored several search warrants in cases involving electronic evidence, emails, text messages, and the use of the Internet. I also regularly consult with other experienced law enforcement officers, special agents, and FBI computer scientists who have likewise participated in these types of investigations.

2. This affidavit is submitted in support of an application for a search warrant for the Device, (more fully described in Attachment A), and the data located therein, there being probable cause to believe that located in the place described in Attachment A are items described in Attachment B, being evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1951 and 924(c), Hobbs Act Robbery and Brandishing a Firearm in Furtherance of a Crime of Violence, respectively.

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and

instrumentalities of violations of 18 U.S.C. §§ 1951 and 924(c) are located in the place described in Attachment A.

4. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

**INVESTIGATION**

5. The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation into violations of 18 U.S.C. §§ 1951 and 924(c). The current investigation involves a pattern of violent, armed robberies of armored truck used to transport currency.

6. On October 30, 2019 at approximately 2:29 p.m., the Greenwood Village Police Department responded to the Bank of Colorado located at 5201 South Yosemite Street, Greenwood Village, Arapahoe County, Colorado, regarding an armed robbery of a Brinks armored car. After arriving on scene Greenwood Village officers began investigating the incident. Shortly thereafter, investigators with the FBI Rocky Mountain Safe Streets Task Force (RMSSTF), arrived to assist in the investigation. Investigators reviewed surveillance video and conducted interviews and learned the following:

7. At approximately 2:08PM Mountain Daylight Time (MDT), a Brinks armored car driven by Brinks Messenger S.G. (a person over 21 years old) arrived in front of the Bank of Colorado. At approximately 2:10PM MDT, a dark brown or dark gray colored Nissan Pathfinder bearing Colorado license plate CVD251 (hereinafter "suspect vehicle") backed into the parking lot south of the armored car. There was one vehicle parked between the armored vehicle and the suspect vehicle.

8. S.G. wheeled currency inside of the bank. A few minutes later, S.G. left the bank and went to the back of the armored vehicle with a dolly carrying $3000.00 in loose quarters and $50.00 in loose pennies. S.G. opened the rear door of the armored vehicle. As S.G. opened the door, both driver side doors of the suspect vehicle opened.

9. Suspect #1 got out of the rear driver side passenger door and was carrying an AK-47. Suspect #1 immediately ran toward S.G. and the armored vehicle. S.G. dropped to her knees on the rear driver side of the armored vehicle. Suspect #1 attempted to remove S.G.'s handgun from her holster but was unsuccessful.

10. Suspect #2 got out of driver's door carrying a black semi-automatic handgun in their right hand and a set of flex cuffs in their left hand. Suspect #3 also got out of the driver's door and immediately followed Suspect #2. Suspect #3 was carrying a semi-automatic handgun and a blue bag. Suspect #2 entered the rear compartment of the armored truck followed by Suspect #3. Suspect #2 got out of the armored vehicle carrying clear plastic bags of loose money and approximately 2 seconds behind him, Suspect #3 got out of the armored car with a blue bag appearing to contain clear plastic bags inside of it.

11. Suspect #2 got into the driver's seat of the suspect vehicle and Suspect #3 got into the front passenger seat. Suspect #1 left S.G. and returned to the suspect vehicle getting into the rear driver side passenger door. The suspect vehicle left the parking lot and was seen traveling southbound on South Yosemite Street. From the time the suspects were seen getting out of the suspect vehicle to the time they were seen fleeing the scene was approximately 33 seconds. After the robbers left the scene S.G. is seen getting into the armored vehicle, coming out of the vehicle, and then using a cell phone.

12. S.G. provided a written statement and an initial interview while on scene. S.G. reported she pulled up to the Bank of Colorado and unloaded the order with the dolly. S.G. serviced the bank. S.G. left the bank and rolled the dolly down the ramp. S.G. opened the back door of the armored vehicle. As soon as the door opened two men got out of a dark colored SUV that was parked next to a Mercedes. They had handguns pointed at S.G. The passenger had a pistol in their right hand. A male told S.G. to get on the ground, so she dropped to her knees on the rear driver's side of the armored vehicle. One of the robbers came around and tried multiple times to grab her gun out of her holster but was unsuccessful. Another male was yelling "hurry" and "let's go." As soon as S.G. heard the doors

Case 1:21-sw-00681-MEH *SEALED* Document 1 Filed 06/21/21 USDC Colorado Page 8 of 26

shut and the vehicle start to drive off she ran inside the armored vehicle to grab her phone and call 911. During the robbery S.G. was in fear for her life.

13. Investigation ultimately revealed that a total of approximately $359,400 in US Currency in multiple denominations was stolen from the care, custody, and control of Brinks, Inc.

14. Suspect #1 was wearing a dark multi-color jacket that possibly has a black hood, a black balaclava, blue jeans, light colored shoes, gloves, and was carrying an AK-47. An image of Suspect #1 is located below:



15. Suspect #2 was wearing a dark color hooded jacket or sweatshirt, had some type of material over their nose and mouth, some type of green shirt underneath their dark top, blue Nike sweatpants, gloves, dark colored shoes, and was carrying a hand gun, and flex cuffs. An image of Suspect #2 is located below:



16. Suspect #3 was wearing a dark colored Coca-Cola sweatshirt, had some type of material covering most of their nose and mouth, dark colored pants, gloves, some type of camouflage shorts under their pants, dark colored shoes, and was carrying a handgun and dark blue bag. An image of Suspect #3 is located below:



17. A dark blue bag, appearing identical to the one carried to the Brinks truck from the Nissan Pathfinder by Suspect #3, was recovered inside the Brinks truck. S.G. confirmed to investigators that the blue bag was not inside the truck prior to the robbery, and she related that one of the suspects likely dropped the bag while stealing the money from the back of the truck.

18. The surveillance video showed that Suspect #3 climbed into the back of the carrying a blue bag without any writing or logos on it. The surveillance video showed Suspect #3 climb out of the back of the Brinks truck carrying a blue bag with "Brinks" written on it in distinctive white lettering. The blue bag with "Brinks" labeled on it appeared to be full of money. The plain blue bag was recovered as evidence. The plain blue bag was submitted as evidence for testing by the Denver Crime lab for Forensic Biology Analysis (DNA).





19. Investigators performed a subsequent video canvass of the surrounding area and along S.G.'s route preceding the robbery. A surveillance camera was located at Galaxy Liquors, 8960 E. Hampden Avenue in Denver. Galaxy Liquors is directly adjacent to Wells Fargo Bank at 8980 E. Hampden Avenue, which S.G.'s route serviced just prior to the Bank of Colorado in Greenwood Village. In the footage captured from that camera, investigators observed two vehicles of note: what appeared to be (based on body style and distinctive wheel type) a black 2012 to 2014 Nissan Maxima, and a beige or light-colored 2002 to 2009 Lexus GX SUV. Each vehicle appeared to enter the camera frame at either around the same time or shortly after the armored truck, loiter in the area without disembarking any passengers, and then exit the parking lot directly after or just before the armored truck. Investigators noted that the vehicles appeared to circle around the area of the armored truck, as if the drivers were keeping visual surveillance of the truck and surrounding area.

20. With these vehicles in mind, investigators re-reviewed the footage from Bank of Colorado that captured the truck robbery in Greenwood Village. Just after S.G. entered the bank and the Pathfinder arrived, the same (or an identical) black Maxima slowly circled the lot at least two times. It then drove off camera toward the south just prior to the robbery taking place. After the robbery, the Pathfinder fled along the same route taken by the Maxima.




*Maxima at 8960 E. Hampden Ave.*



*Maxima in front of 5201 S. Yosemite St.*



SW_00000394





*Maxima in front of 5201 S. Yosemite St.*



*Maxima seen on ATM Camera behind 5201 S. Yosemite St.*

***Recovery and Search of Nissan Pathfinder***

21. On November 1, 2019, the suspect vehicle used to commit the armored truck robbery was recovered less than a mile away from the robbery scene. The vehicle, a 2015 Nissan pathfinder bearing Vehicle Identification Number (VIN) 5N1AR2MN1FC687424, was recovered in the area of the 5300 block of Park Terrace Drive in Greenwood Village. This area is directly south of the Bank of Colorado where the robbery occurred. Investigation revealed that the Pathfinder had been stolen from a Dallas-area auto auction lot (Mannheim) in the days preceding the Greenwood Village robbery. The suspect vehicle was towed and secured in a vehicle processing bay at the Greenwood Village Police Department. Investigators learned that on June 8, 2019, an armored truck robbery occurred in Houston, Texas. The vehicle used to commit the June 8, 2019 robbery was a black Ford Focus which was stolen from Manheim's auto auction lot in Dallas. A blue stolen Ford Raptor pickup truck was recorded on video dropping off the suspect who stole the black Ford Focus. When the blue Ford Raptor pickup truck was later recovered, a credit card receipt from a TimeWise gas station was recovered. The Visa credit card number was identified by investigators as the account of Jimmy Garrison.

22. During a subsequent video canvass of the neighborhood where the 2015 Nissan Pathfinder was recovered, investigators located a Ring cloud-based camera doorbell on a residence just north of where the Pathfinder was recovered. A review of the camera's footage revealed that a few minutes after the

armored truck robbery occurred, the Pathfinder was seen fleeing southbound on Park Terrace Drive directly in front of the camera. Within minutes, what appeared to be the same black Nissan Maxima was seen passing the camera from the opposite direction, headed back northbound on Park Terrace Drive. Investigators concluded that the Maxima had staged in the area and had likely driven the suspects away after they abandoned the Pathfinder.

23. On November 6, 2019, Investigators obtained a search warrant to search the recovered Nissan Pathfinder for evidence that could identify the suspects. On November 6, 2019, RMSSTF investigators processed the vehicle with Greenwood Village Police Detective Tom Fanta and Greenwood Village Crime Scene Investigator Burkhalter. Investigators noted that many surfaces in the car appeared to have been wiped down with a chemical or cleaning solution of some sort, making latent print or DNA recovery difficult or impossible. Among the items recovered was the packaging for a log chain.

***Houston Robbery/Murder, Lake Charles ATM Incident, Identification of Brown and Taylor***

24. On October 31, 2019, the FBI released surveillance video of this robbery to the local media in the Denver Metropolitan area in order to generate anonymous tips or to encourage any member of the community with potential information about the robbery to contact Denver Metro Crime Stoppers or the FBI. This footage eventually gained nationwide media attention.

25. Shortly thereafter, Investigators learned that a Brinks armored truck driver had been shot and killed during a robbery on October 24, 2019, in Houston, Texas. Investigators also eventually learned that the weapons and method of operation (including the use of "follow" vehicles) used in the Houston murder and robbery were similar to the method of operation and weapons used by the suspects who committed the robbery in Greenwood Village on October 30, 2019.

26. On November 21, 2019, Investigators learned that members of the Houston Police Department had conducted surveillance on and arrested several persons of interest in the Houston murder and robbery case that occurred on October 24, 2019. Investigators learned that these persons of interest

were covertly followed to Lake Charles, Louisiana, where they were observed attempting to steal an Automatic Teller Machine (ATM) by pulling it out of a business with a log chain. Investigators recalled the recovery of the log chain packaging in the Nissan Pathfinder shortly after the Greenwood Village robbery.

27. The following persons were arrested in the Lake Charles incident: Rodney Hill, Jamaul Hunt, Don Tyrone, Harold Oliver, Aje Carter, Quaylon Brown, Javarion Davis, and Reginald Simmons. Investigators with the Lake Charles Police Department seized several cell phones from the arrestees. The Lake Charles Police Department, Houston Police Department, and the Houston Division of the FBI were also planning to obtain search warrants to extract and analyze the data from the cell phones.

28. On December 12, 2019, Investigators learned from Houston FBI Special Agent (SA) Jeffrey Coughlin that data had been extracted from the phones seized by the Lake Charles Police Department. One of the phones was seized from Quaylon Brown upon his arrest in Lake Charles.

29. SA Coughlin relayed that on October 27, 2019, (a few days before the Colorado robbery) Quaylon Brown was involved in a text message conversation with an individual named "Roun" in Quaylon Brown's contact list. "Roun's" telephone number was (281) 409-9818. Using open source records, subscription services, and law enforcement databases, investigators were able to determine that this phone number listed to David Taylor.

30. Investigators learned that on October 27, 2019, Quaylon Brown sent a message to David Taylor asking, "what ya got going." David Taylor replied, "I'm in Denver". Brown then sent Taylor a calendar with airline prices for flights from Houston to Denver. David Taylor stated, "lil bro just got a flight at 5 so,ehting tomorrow—then ride back with me". Quaylon Brown asked, "when we coming back?" David Taylor replied, "Dk bro. when the job done. Shouldn't be longer than a week".

31. There was another text message conversation between Quaylon Brown and David Taylor on the evening of October 30, 2019. David Taylor stated, "I'm on the way back home. Shit was trash honestly. Way better cars in Houston. Well better and easier opportunities. I got you tho. Ima pull up on you".

32. On January 10, 2019, Denver FBI SA Donald Peterson received a copy of the report regarding the data extraction of the aforementioned Apple iPhone seized from Quaylon Brown by Lake Charles Police Officers after his arrest on November 21, 2019. Investigators reviewed a copy of the report. There were text message logs in the report. The report also included photographs and videos that were extracted from the phone. Investigators verified the phone number associated with the I-phone seized from Quaylon Brown was (832) 807-3156, and the owner identification of the phone stated "Quaylon's iPhone."

33. Investigators observed a text message on October 24, 2019, (about a week before the Denver Brinks robbery) at 8:51 p.m. from Quaylon Brown to (832) 606-4449 that stated, "I suppose to leave for Denver tonight".

34. Investigators observed text messages Quaylon Brown exchanged with (281) 716-0438 on November 3, 2019, (a few days after the robbery) between 9:00 p.m. and 10:16 p.m. One message from that number to Quaylon Brown stated, "I seen a video that look like y'all..if ppl talking and rumor spreads to the wrong ears…you know the rest".

35. Investigators observed a series of text messages between Quaylon Brown and (832) 425-3156 between October 22, 2019, at 12:24AM and October 24, 2019, at 3:09PM. An open source records search of (832) 425-3156 showed that the number listed to Davesha Franklin. The conversation appeared to be Quaylon Brown asking Davesha Franklin to use her vehicle for "work". Quaylon Brown asked if he could add darker tint to Davesha Franklin's vehicle so that nobody could see him. During the conversation, Quaylon Brown offered Davesha Franklin 10%, then 15%, of "whatever I make" to use the vehicle.

36. Investigators recalled that the Houston Police Department and the Houston FBI Division were investigating an armed robbery of a Brinks armored truck that occurred in Houston on October 24, 2019, during which a Brinks employee was shot and killed. Investigators were aware that the getaway vehicle used by the suspects to flee the scene of that robbery and murder was a newer model black Chevrolet Impala. A search of Texas Department of Motor Vehicle records showed that Davesha

Franklin was the registered owner of a black 2018 Chevrolet Impala, bearing Texas license plate LZJ295. Investigators noted that the last message from Quaylon Brown to Davesha Franklin stated "I finna come switch out cars n go get mine finally". This message was sent after the murder and robbery of the Brinks employee in Houston on October 24, 2019.

37. Investigators observed a series of text messages between Quaylon Brown and (832) 706-6601 between October 24, 2019 and October 29, 2019. An open source records search showed that (832) 706-6601 listed to Rejhae Alcorn, who investigators believe is possibly the mother of one of Quaylon Brown's children. There was a message at 8:18AM on October 28, 2019, that stated "im finna catch my flight to Denver in a hr".

38. Investigators observed an image of an Instagram post by "grindboy1000" stating that he was at the Crown Plaza Denver. The image was sent from Quaylon Brown's phone at 9:41PM on October 27, 2019. Investigators recognized the location of the picture to be the sidewalk in front of 499 15th Street. This address is the parking lot located across the street from the Crown Plaza at 1450 Glenarm Street in Denver. The caption under the image stated, "grindboy1000 Rain Sleet or Snow (snowflake emoji) For The Dough #denvercolorado." The face of the person in the image could not be seen. The shoes worn by the person in the image were consistent with the shoes worn by Suspect #3 during the October 30, 2019, robbery in Greenwood Village, Colorado.






Sidewalk in front of 499 15th St



Suspect #3 shoe

39. Investigators observed images of rifles and handguns extracted from Quaylon Brown's iPhone that were consistent with the weapons used during the robbery on October 30, 2019, in Greenwood Village, Colorado.



40. Investigators observed a group chat on the phone that included Quaylon Brown and several other individuals. In the group chat, on November 1, 2019, someone posted a link to an ABC News video of the Greenwood Village, Colorado, Brinks truck robbery. Quaylon Brown participated in the chat. One of the comments stated, "Its just that muthafuckin easy… perfect timing…shidd the guard know the drill. Aint finna die for that money". There was a comment from Quaylon Brown that stated, "big nuts I jus made it back from Denver tho what you wanna go do (laughing emoji)". There were numerous other comments made during the conversation that suggested that Quaylon Brown participated in the Greenwood Village Brinks robbery.

***Beaumont, Texas, Attempted Armored Truck Robbery***

41. On January 14, 2019, Investigators learned the following: On January 13, 2019, Houston Police Department investigators conducted surveillance on two suspicious vehicles with false license plates that were following armored trucks. The HPD investigators conducting the surveillance observed that the two vehicles followed an armored truck in the parking lot of a shopping center in Beaumont, Texas. The vehicles backed into parking spaces next to the armored truck after the truck parked.

42. The movements of the vehicles were consistent with the methods used by suspects in recent armored truck robberies that occurred in Texas and Colorado in 2019. Fearing that an armed robbery was about to occur, and due to an imminent risk of serious bodily injury or death to the armored truck driver and other persons in the shopping center, the HPD surveillance officers requested additional uniformed officers to confront the occupants of the suspicious vehicles. Four occupants of the two vehicles were arrested and were identified as David Taylor, Jamarius Jones, Prentis Delaney, and Coray Q Brown. Multiple firearms, including semi-automatic handguns and assault rifles, were recovered from the scene of the arrest.

43. In addition, masks, gloves, and a bottle of rubbing alcohol were recovered from the arrestees' vehicles. investigators recalled when the Nissan Pathfinder used in the commission of the Greenwood Village Brinks robbery was recovered and processed, it appeared the center console had been wiped down with some type of chemical, presumably to destroy latent print and DNA evidence. Investigators concluded the rubbing alcohol recovered from the vehicles in the Beaumont, Texas arrests would have likely been used for the same purpose.

***Search Warrant for and Analysis of David Taylor Call Detail Records***

44. RMSSTF Task Force Officer (TFO) William Monahan sought and was granted a search warrant to obtain David Taylor's Call Detail Records (CDRs) with historical location data for his phone number, (281) 409-9818. TFO Monahan received the records pursuant to the warrant on January 13, 2019. In an initial triage of the records, TFO Monahan observed that David Taylor's device used cell towers and sectors consistent with the device traveling from Houston to Denver on or around October 27, 2019. The device also used cell towers and sectors consistent with being in the area of 5201 S. Yosemite St. in Greenwood Village, Colorado, at or around the time of the Brinks truck robbery on October 30, 2019.

***Identification of Justin White and Nissan Maxima***

45. TFO Monahan also examined the phone numbers that David Taylor had contact with while he was in Denver. Investigators have long suspected that the robbers would have a local confederate who assisted and facilitated their crimes. He conducted open records, subscription-based service, and law enforcement database searches on the most-dialed phone numbers on David Taylor's CDRs. One of the numbers, (281) 733-9616, listed to a Justin White. Justin White has an extensive history of pawn transactions in the Houston area dating back to 2018. However, on October 17, 2019, he conducted a pawn transaction in Aurora, Colorado. During that transaction, he presented a Texas driver's license, but listed a local address as his residence. The address Justin White provided was 9888 E. Vassar Drive in Denver, Colorado.

50. Investigators conducted law enforcement database searches on Justin White and found that Justin White is the registered owner of a black 2014 Nissan Maxima, bearing Texas license plate KMY7221. Investigators conducted further searches for records related to this license plate, including law enforcement and commercial License Plate Recognition (LPR) databases. LPR systems consist of specialized scanning cameras, either mounted at stationary positions or on vehicles, that catalog and photograph license plates that pass through their field of view. LPR systems are commonly used by vehicle repossession companies, law enforcement, and other public and private entities for informational purposes about vehicle traffic in a particular area. In their review of LPR data, investigators observed the Maxima seemed to be based in the Houston and Corpus Christi, Texas, areas throughout 2019 until early September. On September 16, 2019, the Maxima begins to register on multiple law enforcement LPR cameras throughout Aurora, Colorado on almost a weekly basis. Additionally, commercial (likely repossession company) LPR scanners registered the Maxima on three separate occasions at the Vassar Drive apartment complex, most recently on March 3, 2020.

51. Investigators learned that that an armed robbery of a Loomis armored truck occurred at 150 West El Dorado Street in Houston, Texas, on the afternoon of September 5, 2019. The suspects used a stolen white van and a 2017 or 2018 white Kia forte. The white van pulled up to the Loomis truck and

three armed suspects exited the stolen van armed with guns and robbed the operator of the Loomis truck. The suspects fled in the stolen white van and abandoned it nearby. The suspects then got into the white Kia to flee the area.

52. The method of operation and physical description of the suspects in the September 5, 2019, incident matches the robbery at 5201 S Yosemite St. on October 30, 2019. LPR databases place Justin White's Nissan Maxima in the Houston area on the day immediately before the Loomis truck robbery and the day immediately after. The September 4, 2019 license plate reader capture of the Nissan Maxima was at 11911 Gulf Freeway in Houston, Texas. Gulf Freeway is also known as Interstate 45. 11911 Gulf Freeway is only seven miles away from 150 W. El Dorado Blvd.

53. On March 6, 2020, Commerce City Police Detective and Rocky Mountain Safe Streets Task Force Officer Michael Kim drove to the area of 9888 E. Vassar Drive to locate and make visual contact with the Maxima. TFO Kim found it parked in the same area as all of the commercial LPR scans. Upon seeing it, TFO Kim recognized it as apparently the same Maxima seen in surveillance camera footage on October 30, 2019 trailing the Brinks armored truck prior to the robbery, circling the scene of the robbery just prior to its commission, and leaving the area where the robbery vehicle was abandoned minutes later.



*Justin White's Maxima Parked on Vassar Dr.*

54. Investigators believe the Maxima seen trailing the Brinks truck minutes prior to the robbery is the same vehicle later seen circling the robbery scene. It is also the same vehicle seen picking up the robbers after they abandoned their other vehicle. Based upon this investigation, Your Affiant believes this Maxima is the vehicle owned by Justin White.

55. On March 11, 2020, TFO Kim sought and was granted a search warrant to install a GPS tracker on the Nissan Maxima. The warrant was issued by the United States District Court for the District of Colorado and was signed by the Hon. Magistrate Judge Michael E. Hegarty. Investigators tried numerous times to locate the Maxima after the issuance of the warrant in order to install the tracker but were unsuccessful. Subsequent LPR searches indicated that the Maxima had traveled down to Texas.

56. On March 23, 2020, TFO Kim sought and was granted a search warrant to obtain historical and prospective CDR records with location data for Justin White's phone along with prospective GPS and Pen Register/Trap and Trace (PRTT) device data. The warrant was issued by the United States District Court for the District of Colorado and was signed by the Hon. Magistrate Judge N. Reid Neureiter.

57. On March 26, 2020, while conducting physical surveillance on Justin White's apartment, investigators located the Nissan Maxima parked inside the residential parking garage of Justin White's apartment building, located at 9888 E. Vassar Drive, Building G. This garage is communal, not exclusive to Justin White, and serves all residents of Building G. TFO Kim sought and was granted a refreshed search warrant to install a GPS tracker on the Maxima. The warrant was issued by the United States District Court for the District of Colorado and was signed by the Hon. Magistrate Judge N. Reid Neureiter. Immediately upon receipt of the warrant, investigators successfully placed a covert GPS tracker on the vehicle.

58. TFO Kim observed that Justin White's PRTT indicated he was in Houston, TX during the week of April 18, 2020. His vehicle tracker, however, showed that the Maxima was still parked at the Vassar Dr. address. On April 27, 2020, investigators observed that Justin White's PRTT indicated he

was back in the Denver area. In addition, his vehicle tracker indicated that the Maxima was traveling throughout the cities of Denver and Aurora.

59. TFO Kim requested that Aurora Police Department (APD) uniformed officers contact the vehicle in the area of E. 6th Ave. and Helena St. and RMSSTF investigators would respond to impound the vehicle for a search pursuant to a warrant. Just before APD contacted the vehicle, Justin White and Jimmy Garrison exited a nearby store and walked toward the Maxima. Officers intercepted them just as White began to get into the driver seat and Garrison the passenger seat.

60. RMSSTF investigators responded to the scene and verified that the Maxima appeared to be the same one depicted in the surveillance footage from the Brinks armored truck robbery that occurred in Greenwood Village on October 30, 2019. Investigators attempted to speak with Justin White about the vehicle and its potential involvement in the robberies. White denied any knowledge and declined to speak with investigators further; however, he became extremely agitated when he was not permitted to retrieve his cellular phone from the vehicle. White and Garrison were not physically detained at any point, and they were permitted to leave the area while investigators sealed and impounded the vehicle for transport to the Denver Police Vehicle Impound Facility. While retrieving the vehicle's keys from the center console (where they were deposited by APD officers after being removed from White), investigators observed the vehicle contained several personal items, clothing, and a phone in the center cup holder.

61. Investigators immediately recognized that Jimmy Garrison matched the physical description of Suspect #3 in the Brinks robbery. Suspect #3 was the suspect armed with the AK-47 rifle who controlled the victim at gunpoint.

62. TFO Kim contacted investigators with HPD assigned to the Houston FBI Violent Crimes squad. They advised that Jimmy Garrison's name was related to the investigation of an armored car robbery that occurred on June 8, 2019. In that case, a Garda armored car driver was shot in the arm during a robbery. The suspects fled in a stolen vehicle. That stolen vehicle eventually led investigators to another stolen vehicle, which was found to contain retail receipts with Garrison's name on them. This

second stolen vehicle containing the receipts was stolen from the same Mannheim auto auction lot where the Nissan Pathfinder from the Greenwood Village robbery had been stolen from.

63. On or about May 6, 2020, TFO Kim applied for and was granted a search warrant to search the 2015 Nissan Maxima with Texas License Plate KMY7221 which was secured at the Denver Sheriff Vehicle impound facility.

64. On May 7, 2020, RMSSTF investigators search the 2015 Nissan Maxima. A card for a self-storage unit at Life Storage 11951 E Mississippi Ave, Aurora, CO was recovered inside the vehicle. The card had handwritten on it Building 20, floor 1, unit 2079. A receipt from Chase Bank for a $4,500 cash deposit on November 4, 2019, was recovered from the vehicle. The receipt was for an account ending in 7559. Additional Chase bank records for account in the name of Justin White with account number 5783377559 were recovered from the vehicle. Receipts for approximately $2,500 worth of purchases made between November 1, 2019 and November 6, 2019 were recovered from the vehicle. Receipts for four $1,000 money transfers made at Walmart stores were recovered from the vehicle.

65. On May 27, 2020, investigators received a Denver Crime Lab report from Forensic Scientist Eric Duval. The report stated that a mixture of DNA was found on the blue bag recovered from the Brinks truck, and DNA from a major male contributor was recovered from the bag. The DNA profile from the major male contributor was entered into the Combined DNA Index System (CODIS) and received a match to Texas offender Jimmy Garrison.

66. The Denver Crime Lab report stated the qualifying offense that Jimmy Garrison's DNA was entered into the system for was Aggravated Assault with a Deadly Weapon. A records search of Jimmy Garrison's criminal history showed conviction for Aggravated Assault with a Deadly Weapon and Aggravated Robbery in 2011.

67. Investigators reviewed the surveillance video of the robbery at 5301 S Yosemite St and still images of the suspects. Jimmy Garrison matched the physical description of Suspect #3, approximately 5'08" and 220', with a heavy build.

68. TFO Monahan obtained a search warrant for the call detail records of Jimmy Garrison's phone number, (787) 988-9344. (787) 988-9344 was associated with Sprint wireless phone number in the name of Jimmy Garrison.

69. TFO Monahan obtained the call detail records from Sprint on or about July 10, 2020. TFO Monahan analyzed the call detail records for (787) 988-9344. The call detail records were for a period of time between June 01, 2019 until April 27, 2020.

70. The call detail records showed that Jimmy Garrison's phone was in the Houston, TX area on September 8, 2019, and the phone was in or near Broken Arrow, OK on September 9, 2019 at 5:06 a.m.

71. The call detail records showed that Jimmy Garrison's cell phone went to Denver International Airport on October 7, 2019 and then to Houston, TX. Jimmy Garrison's phone returned to the Denver area on October 12, 2019 and remained in the Denver area.

72. The call detail records showed no activity on October 28, 2019, the day when the suspect vehicle was recorded on an Aurora Police license plate reader following a Garda Armored Truck.

73. The call detail records showed two calls on October 31, 2019. The first call was an outgoing call to (866) 397-9884 at 8:56 p.m. The cell tower used by Jimmy Garrison's phone for this call was located near interstate 225 and S Parker Rd in Aurora, CO. (866) 397-9884 was possibly a Sprint pay by phone number. The second call was an incoming call at 11:19 p.m. from (781) 212-6735. A computer search of open source records for (781) 212-6735 resulted in no records found.

74. On February 2, 2021, the Federal Grand Jury issued an indictment against Jimmy Garrison for Violation of the Hobbs Act and Possession of a firearm during the commission of a violent crime.

75. Between February 3, 2021, and May 25, 2021, FBI Agents and Houston Police Officers attempted to locate Jimmy Garrison but were unable locate him.

76. On May 26, 2021, Wyoming State Trooper David Noland conducted a traffic stop in Carbon County, Wyoming and identified Jimmy Garrison as a passenger in the vehicle. Trooper Noland learned that Jimmy Garrison had an outstanding federal arrest warrant. Trooper Noland arrested

Jimmy Garrison and transported him to the Carbon County Jail. Jimmy Garrison was in possession of Yellow colored Apple I-phone. Cheyenne Police Officer and Federal Task Force Officer Laura Michael seized Jimmy Garrison's yellow Apple I-phone with an unknown model number and unknown serial number. The phone was placed into the Cheyenne Police Department as evidence and was subsequently shipped to the Denver FBI field Office. The Apple I-phone was then secured at the Rocky Mountain Safe Streets Task Force Office.

77. The drivers of the black Nissan Maxima and the gold Lexus that followed the Brinks truck on October 30, 2019 from 8900 E Hampden Ave to 5201 S Yosemite St have not been charged and additional evidence it needed to positively identify and to establish probable cause to arrest the remaining suspects who participated in the armed robbery of the Brinks truck at 5201 S Yosemite St on October 30, 2019.

**CONCLUSION**

78. Based on my knowledge, training, and experience, I know that suspects, confederates/accomplices, and/or co-conspirators regularly use cellular telephones to discuss and plan criminal exploits, and ultimately use cellular telephones to execute those plans. Among other things, actors in criminal incidents also regularly use cellular phones to facilitate their immediate flight therefrom, to aid in the evasion of law enforcement in the days following the crime, and to research media coverage of their exploits. Evidence of these illicit uses of the cellular telephone are retained in the phone's memory for a significant amount of time. Additionally, when people replace or upgrade their cellular phones, it is common practice to transfer data (from the internet-based cloud or otherwise), from the old phone to the new phone. This data can include but is not limited to photos and videos, text messages, call history and applications. Accordingly, your affiant believes this information is still contained on the recovered Device.

79. The search of the Device will be limited to evidence pertaining to the crimes listed above, and evidence pertaining to these crimes can reasonably be expected to be found in the categories of the

Device as listed in Attachment B. Because the types of evidence being sought (i.e., communications, associations, location information, and attribution information) can be found in connection with data that existed well before or after the crimes alleged in this affidavit occurred, and can be found in data that does not contain time stamps, it is necessary to search for relevant information without temporal limitations. The search is limited to information relating to the Subject Offenses. In the event other criminal activity is observed in the process of reviewing the Device, your affiant will then segregate the unrelated information and determine whether a further warrant is necessary.

80. Based on the investigation described above, probable cause exists to believe that inside the Device (described on Attachment A), will be found evidence, fruits, and instrumentalities of the October 30, 2019 violation of 18 U.S.C. §§ 1951 and 924(c) (described on Attachment B).

81. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items described in Attachment A for the items listed in Attachment B.

82. I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Respectfully submitted,

*s/Jared Purdy*
Jared Purdy, Task Force Officer
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this 21st day of June, 2021

Michael E. Hegarty
UNITED STATES MAGISTRATE JUDGE

Application for search warrant was reviewed and is submitted by Brian Dunn, Assistant United States Attorney.